CLARKE v. DETROIT & SECURITY TRUST CO.

1. DEEDS—DELIVERY—ESCROWS—INADVERTENT RECORDING.
    Deed drawn by attorney and left with him under instructions to hold it subject to grantor's control did not constitute delivery in escrow, nor was delivery accomplished by inadvertent recording of deed by attorney's employee.

2. SAME—GRANTEE TAKES NO TITLE UNDER UNDELIVERED DEED.
   Grantee in deed which was never delivered takes no title, although it was inadvertently recorded.

3. ESTOPPEL—CONTRACTS—SPECIFIC PERFORMANCE.·
   Daughter named as grantee in deed inadvertently recorded, who deeded back to father and acquiesced in plan by which said property was left in trust for minor son under father's will, and she received other property, is estopped to assert contract with father to deed said property to her.

4. SPECIFIC PERFORMANCE—MATTER OF GRACE AND NOT OF RIGHT.
   Specific performance in court of equity is matter of grace and not of right.

5. SAME—EQUITY—ACQUIESCENCE IN CHANGED PLAN.
   Daughter is not entitled to specific performance of contract with father to deed to her certain property, where she acquiesced in plan by which it was otherwise disposed of under father's will, and she was willed other property in lieu thereof.

Appeal from Isabella; Hart (Ray), J.   Submitted January 15, 1932.   (Docket No. 149, Calendar No. 36,201.)   Decided March 2, 1932.

Bill by Lucile Hagan Clarke against Detroit & Security Trust Company and others for specific performance of an alleged contract.   Decree for defendants.   Plaintiff appeals.   Affirmed.

*Wiley, Streeter, Smith & Ford* and *Earl I. Heenan,* for plaintiff.

*Hayden, Hubbard & Rathbun,* for defendants.

NORTH, J.   This is a bill for specific performance. Relief was denied, and plaintiff has appealed.

On November 25, 1921, Charles E. Hagan, now deceased, executed and left in the hands of the attorney who then represented him a quitclaim deed of a piece of business property located in Mt. Pleas-

ant, Michigan, reserving a life estate to himself. Plaintiff claims there was valid delivery in escrow, but this is denied by defendants. Through a mistake of an employee in the attorney's office, and contrary to the direction given by Mr. Hagan, the deed was forthwith recorded. Upon being informed of this mistake by the attorney, Mr. Hagan had a quitclaim deed prepared by which title of record could be reconveyed from plaintiff to himself. In mailing the deed to his daughter at Ann Arbor, Michigan, for execution, he wrote, on December 15, 1921, as follows:

"I am sending you this quitclaim deed for you to sign and return to me at once. As soon as you have it properly signed and witnessed before a notary. When I receive it back I will have a warranty deed of this store, as described, made direct to you, signed by myself and Amy, then you will have a clear title and at my death it will be yours without being probated. My will, as drawn, gives me possession as long as I live. I believe that is what you suggested in your letter and I want to satisfy you as near as possible.

"File this letter away so if my papers should be lost in mail, you will have evidence of my intentions as to disposition of store. I will bring the will and papers down so you can see them when we come."

In compliance with her father's request, plaintiff executed and returned the deed to him. It was duly recorded.

Prior to this correspondence, and on the 18th day of August, 1921, Mr. Hagan married his second wife, Amy Marie Hagan, who was much younger than he. Plaintiff was the only child of his former marriage. In writing his daughter on September 22, 1921,

which was her first information concerning his marriage, he said:

"One. of the important things I have not overlooked (that is) important to you. And that is my property. I have it thoroughly understood and agreed upon that nearly all of the property I now possess goes to you when I am gone."

Obviously it was in accordance with this plan that Mr. Hagan and his wife executed the deed of November 25th, which was inadvertently recorded. On this same day by other conveyances title to the Hagan homestead was placed in Mr. Hagan and his second wife as joint tenants. After receiving the quitclaim deed from plaintiff, Mr. Hagan and his second wife joined in another deed of the business property in Mt. Pleasant, which deed purported to convey title to plaintiff with life estate in Mr. Hagan reserved. This deed was never delivered; instead it was retained by Mr. Hagan and subsequently destroyed.

On the 19th of June, 1924, a son was born to Mr. Hagan and his second wife. This evidently. changed his plan as to the testamentary disposition of his property. He made several wills, and in the last of these wills (May 9, 1929) he devised this Mt. Pleasant business property to the defendant Detroit & Security Trust Company in trust for his minor son. Subject to this and a devise of the homestead and his personal property to his wife and of bank stock to plaintiff's son, the residue of Mr. Hagan's estate was left in equal portions to the widow, her minor son, and plaintiff. By her bill of complaint, plaintiff seeks specific performance of the alleged promise of her father as contained in the above-quoted portion of his letter of December 15,

1921. Her claim is that in this letter her father promised and agreed to redeed to her the Mt. Pleasant business property so that at his death it would be plaintiff's "sole and separate property in fee simple," and that plaintiff's quitclaim deed back to her father on the 20th of December, 1921, was a sufficient consideration for this alleged agreement.

It is first asserted in appellant's brief that there was a complete and valid delivery in escrow by Mr. Hagan of the deed to his daughter made on the 25th of November, 1921. This contention is not sustained by the record. We will not quote the testimony in full, but its character is indicated by the following: The attorney, who prepared this deed, testified as follows concerning it:

"I had instructions from Mr. Hagan to place it in his pouch until he would draw his will. Then he intended to place the deed which he had made, the deed made to Lucile Hagan, * * * in with the will and leave it there until such time as he agreed to deliver it to her. * * * As I recall it, Mr. Hagan instructed me to keep the deed on the store property until he made his will, and then he intended to put them all into his private box he had in the Exchange Bank. * * * I am very certain that Mr. Hagan at that time said he wanted to leave the store to Lucile, and that he didn't want to leave it in such a position he couldn't withdraw it but wanted to make a will leaving it to her, and he said, 'Draw that deed,' and he would put it in his papers where she would have it after his death and I drew that deed."

There is other testimony of like character, from which it clearly appears that the grantor did not surrender control of the instrument. The circuit judge was right in holding there was no delivery of the deed in question.

The further claim is made by appellant that, regardless of the delivery or nondelivery of the November 25, 1921, deed, when it was once recorded it became a cloud upon Mr. Hagan's title; that the deed from plaintiff back to her father on December 20, 1921, was sought for the purpose of removing this cloud, and the giving of this deed by plaintiff constituted a sufficient consideration for the alleged agreement on the part of Mr. Hagan contained in his letter of December 15, 1921, to convey the Mt. Pleasant business property to her so that she would become the sole owner upon his death; and that she is entitled to specific performance. We think the testimony is such that this contention cannot be sustained. At the time plaintiff gave the quitclaim deed back to her father she evidently was not claiming title or any interest whatever in the Mt. Pleasant property. Under the proofs she had no title. It does not appear from the record that she even had any knowledge at that time of the quitclaim deed made to her or at least of its having been recorded. At her father's request she voluntarily executed the deed running from herself to him without thought of consideration, and her present allegation of a consideration arising from her consenting to remove cloud from the title savors much of being an afterthought. Mr. Hagan left plaintiff $20,000 life insurance, he had given her property for the sale of which she had received $10,000, and, as noted above, in his last will he gave her a one-third interest in the residue of his estate. Prior to the date of Mr. Hagan's last will, correspondence passed between him and plaintiff in which she unquestionably acquiesced in the plan embodied in his will whereby this identical property was left in trust for the minor son. We think, under the circumstances,

plaintiff must be held to be estopped from asserting the claim made in her bill of complaint, and further, since specific performance in a court of equity is a matter of grace and not a matter of right, under the circumstances disclosed in this record, plaintiff is not entitled to the relief prayed.

The decree of the circuit court is affirmed, with costs to appellees.

Clark, C. J., and McDonald, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.